# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW STRESHENKOFF, | ) |
| | ) Civil Action No. 2: 12-cv-01831 |
| Plaintiff, | ) |
| | ) United States District Judge |
| v. | ) David S. Cercone |
| | ) |
| ROBERT TUTKO, RAMON RUSTIN, | ) United States Magistrate Judge |
| Warden; WILLIAM EMERICK, Deputy | ) Cynthia Reed Eddy |
| Warden; JAMES DONIS, Major; and | ) |
| JOHN DOE(S), Correctional Officers, | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

I.  **RECOMMENDATION**

For the reasons that follow, it is respectfully recommended that the Motion to Dismiss filed by Defendants (ECF No. 20) be granted. Plaintiff has requested, and been granted, two extensions of time in which to respond to this motion. The last Order directed Plaintiff to respond by May 20, 2014.

Plaintiff has not responded to the motion, and the time for responding has now passed. Therefore, in the absence of any timely response by Plaintiff, the Court will deem the motion to dismiss to be ripe for disposition and will analyze the Complaint on the merits. *Ray v. Reed*, 240 F. App'x 455, 456 (3d Cir. 2007). For the reasons set forth below, it is recommended that the motion to dismiss be granted.

II.  **REPORT**

    A.  **Relevant and Material Facts**

The following allegations are summarized from the Complaint, and must be taken as true in deciding this Motion to Dismiss. *See Newman v. Beard*, 617 F.3d 775, 779 (3d Cir. 2010).

1

This case stems from events allegedly arising on December 23, 2010, when Plaintiff was taken into custody at his place of residence by Defendant Robert Tutko, aa Allegheny County probation officer, and several unidentified officers of the Baldwin Borough Police Department. According to the Complaint, Defendants did not produce a warrant at the time of his arrest and, despite his numerous requests, Plaintiff was never told why he was being arrested.

Plaintiff was then transported to the Allegheny County Jail ("ACJ"). While being processed at ACJ, according to the Complaint, Defendant Tutko threw what appeared to be two (2) hypodermic needles onto the floor in close proximity to Plaintiff. Plaintiff alleges that he immediately alerted several nearby unidentified correctional officers (hereinafter "C.O.s") to the actions of Defendant Tutko and that, upon informing the C.O.s of what he had witnessed, the C.O.s, in a misuse of force, beat him into unconsciousness. Plaintiff was seen at UPMC Mercy Hospital for his injuries, where he was diagnosed as having a concussion, a fractured nose, and contusions to his face and head. He was discharged from UPMC Mercy Hospital and returned to the ACJ infirmary.

Plaintiff next alleges that while recuperating in the ACJ's infirmary, an unidentified ACJ sergeant prematurely discharged him from the infirmary as a form of punishment and transferred him to "an intake pod on level 4." Upon transfer to this pod, Plaintiff alleges that he notified an unidentified C.O. that "there was a problem between him and another inmate and that he was in fear for his safety." Complaint, at ¶ 45. As he feared, Plaintiff was later attacked by this inmate and received injuries to his head and face, which injuries necessitated treatment at UPMC Mercy Hospital. Plaintiff alleges that when he was discharged from UPMC Mercy Hospital, he was returned to ACJ, and placed in segregation, where he was provided with inadequate medical care. Plaintiff was released from the ACJ on or about February 20, 2011.

On December 17, 2012, Plaintiff, then confined at the State Correctional Institution at Huntingdon,[1] commenced this action by filing a Motion for Leave to Proceed *in forma pauperis*, with an attached Complaint filed under the Civil Rights Act of 1871, 42 U.S.C. § 1983, alleging the denial of his Fourth Amendment due process rights, as well as claims under Pennsylvania state law for the torts of false imprisonment, assault, battery, negligence, and the intentional infliction of emotional distress. Named as defendants are Robert Tutko, a probation officer with the Allegheny County Adult Probation; Ramon Rustin, former Warden of ACJ; William Emerick, Deputy Warden of ACJ; James Donis, Major at ACJ; and John Doe(s), unidentified correctional officers of ACJ. On January 8, 2013, Plaintiff's request for *in forma status* was granted and his Complaint was filed the following day.

Defendants have filed the instant Motion to Dismiss (ECF No. 20) along with a Brief in support thereof (ECF No. 21) claiming that the Complaint should be dismissed for failure to state a claim upon which relief may be granted.

  **B.**  **Standard of Review for Motion to Dismiss**

  *1.*  *Pro Se Litigants*

Pro se pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520–521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or the litigant's unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley,* 141 F.2d 552,

---

[1] On September 11, 2013, Plaintiff notified the Court that he had been released from DOC custody. See ECF No. 23.

555 (3d Cir.1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance").

In a section 1983 action, the court must liberally construe the pro se litigant's pleadings and "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247–48 (3d Cir. 1999)).[2]  *See also Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting *Higgins,* 293 F.3d at 688). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. *Gibbs v. Roman,* 116 F.3d 83 (3d Cir. 1997). *See, e.g., Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir.1996) (discussing Fed.R.Civ.P. 12(b)(6) standard); *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir. 1990) (same). Notwithstanding this liberality, pro se litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See, e.g., Taylor v. Books A Million, Inc*., 296 F.3d 376, 378 (5th Cir. 2002).

---

[2] The Court of Appeals for the Third Circuit has explained the liberal construction of pro se pleadings, as follows:

> The federal rules do not adhere to the ancient principle that a pleading must be construed most strongly against the pleader. Nor do the federal courts require technical exactness or draw refined inferences against the pleader; rather, they make a determined effort to understand what he is attempting to set forth and to construe the pleading in his favor, whenever justice so requires. This is particularly true when a court is dealing with a complaint drawn by a layman unskilled in the law. In these cases, technical deficiencies in the complaint will be treated leniently and the entire pleading will be scrutinized to determine if any legally cognizable claim can be found within it.

*Lewis v. Attorney General of U.S.,* 878 F.2d 714, 722 (3d Cir. 1989) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1286, at 381-84 (1969)).

Because Plaintiff is a pro se litigant, this Court may consider facts and make inferences where it is appropriate.

2. *Motion to Dismiss Pursuant to Rule 12(b)(6) - The Legal Standard*

A motion to dismiss pursuant Rule 12(b)(6) challenges the legal sufficiently of the complaint. When reviewing a motion to dismiss, the Court must accept all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. *Burtch v. Milberg Factors, Inc.,* 62 F.3d 212, 220 (3d Cir. 2011), *cert. denied*, -- U.S. --, 131 S. Ct. 1861 (2012) (citing *In re Ins. Brokerage Antitrust Litig.,* 618 F.3d 300, 314 (3d Cir. 2010)). However, as the Supreme Court of the United States made clear in *Bell Atlantic Corp. v. Twombly,* such "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. 554, 555 (2007). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that, while the Complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (quoting *Twombly*, and providing further guidance on the standard set forth therein).

To determine the legal sufficiency of a complaint after *Twombly* and *Iqbal,* the United States Court of Appeals for the Third Circuit instructs that a district court must make a three-step approach when presented with a motion to dismiss for failure to state a claim. *Santiago v. Warminster Twp.,* 629 F.3d 121, 130 n.7 (3d Cir. 2010) (noting that although *Iqbal* describes the process as a "two-pronged approach," it views the case as outlining three steps) (citing *Iqbal*, 556 U.S. at 675). First, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* at 130 (quoting *Iqbal,* 556 U.S. at 675) (alteration in original). Second, the court "should identify allegations that, 'because they are no more than conclusions, are not entitled to

the assumption of truth.'" *Id.* (quoting *Iqbal,* 556 U.S. at 679). Third, '"where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Id*. (quoting *Iqbal,* 556 U.S. at 679).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. *Id.* (citations omitted). In addition, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004); *Lum v. Bank of America*, 361 F.3d 217, 222 (3d Cir. 2004) (in resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider "the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.").

Moreover, the United States Court of Appeals for the Third Circuit has held that, in civil rights cases, a court must give a plaintiff the opportunity to amend a deficient complaint - regardless of whether the plaintiff requests to do so - when dismissing a case for failure to state a claim, unless doing so would be inequitable or futile. See *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.,* 482 F.3d 247, 251 (3d Cir. 2007).

**C.     Discussion and Analysis**

   1.     *Statute of Limitations*

Defendants argue that because Plaintiff's Complaint was filed on January 9, 2013, Plaintiff's claims are barred by the applicable Pennsylvania two year statute of limitations for personal injury actions.

6

The general rule is that a complaint is considered filed when the filing fee is paid or the request to proceed in forma pauperis is granted. *See Hughes v. Smith*, 237 Fed. Appx. 756, 759 (3d Cir. 2007) (citing *McDowell v. Del. State Police*, 88 F.3d 188, 191 (3d Cir. 1996)). However the United States Supreme Court has created an exception to this general rule in the form of the "prisoner mailbox rule," which provides that an inmate's pleadings are deemed filed at the moment he delivers the documents to prison officials to be mailed, and not the date the documents were actually filed in court. *Houston v. Lack,* 487 U.S. 266, 275–76 (1988); *see also Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998) (explaining that "a pro se prisoner's . . . petition is deemed filed at the moment he delivers it to prison officials for mailing"). Although this rule has typically been applied in circumstances involving habeas petitions, courts within the Third Circuit have extended this rule to other contexts, including § 1983 claims. *See White v. Pa. State Police,* 408 F. App'x 521, 522 (3d Cir. 2010) (finding that a prisoner receives the benefit of the mailbox rule for a § 1983 complaint).

Moreover, when applying the prisoner mailbox rule, many district courts will use the date the documents were signed as the presumed delivery date in cases where there is no clear record of delivery to prison officials. *Howard v. Masteron*, No. 06–5632, 2009 WL 5184476, at *1 n. 2 (E.D.Pa. 2009) ("Pursuant to the prison mailbox rule . . . [the] documents [are] filed on the date [the plaintiff] signed them.") (citing *Longenette v. Krusing*, 322 F.3d 758, 761 (3d Cir. 2003)).

At the time Plaintiff initiated this lawsuit, he was an inmate confined at SCI-Huntingdon and, therefore, enjoys the benefit of the prisoner mailbox rule. Both the application for in forma pauperis and the Complaint were signed by Plaintiff on December 12, 2012, and received by the Clerk's office on December 17, 2012. Although, the Complaint was not officially docketed by the Court until January 9, 2013, pursuant to the prisoner mailbox rule, Plaintiffs' IFP application

and Complaint are considered filed as of December 12, 2012, the date Plaintiff signed both documents. Therefore, Plaintiff's Complaint was timely filed under the applicable two year state of limitations.

    2. *Federal Claims Against Defendant Tutko*

Plaintiff alleges that Defendant Tutko detained him "without a warrant or legitimate reason" in violation of his Fourth Amendment due process rights. However, attached to Defendants' brief is a copy of a December 23, 2010 detainer, issued by Judge Robert C. Gallo,[3] which authorized Plaintiff's detainment on the date in question. The detainer was issued because Plaintiff failed to comply with Electronic Monitoring rules in violation of the conditions of his probation. Because Defendant Tutko acted under the authority of a validly issued detainer, it is recommended that the motion to dismiss be granted as to all federal claims brought against Defendant Tutko.

    3. *Federal Claims Against Defendants Rustin, Emerick, and Donis*

Plaintiff has sued Warden Rustin, Deputy Warden Emerick, and Major Donis in their individual capacities. "A defendant in a civil rights action 'must have personal involvement in the alleged wrongs to be liable,' and 'cannot be held responsible for a constitutional violation which he or she neither participated in nor approved.' " *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (internal citations omitted). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

---

[3] Because the detainer is both an indisputably authentic document, as well as a public document, the Court has considered it without the necessity of converting the instant motion into a motion for summary judgment.

It is well established that supervisory liability cannot be imposed under § 1983 on a respondeat superior theory. *See Ashcroft v. Iqbal,* 556 U.S. 662 (2009); *Monell v. Department of Social Services,* 436 U.S. 658 (1978). Purpose rather than knowledge is required to impose liability on an official charged with violations arising from his or her superintendent responsibilities. *Iqbal*, 556 U.S. at 677. "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* A plaintiff must show that an official's conduct caused the deprivation of a federally protected right. *See Kentucky v. Graham,* 473 U.S. 159, 166 (1985).

The Complaint in this matter contains no allegations that these Defendants were personally involved in any of the incidents of which Plaintiff complains. Rather the Complaint simply states that Warden Rustin "manages the day-to-day operations and executes [ACJ's] policies;" that Deputy Warden Emerick "oversees the daily operations;" and that Major Donis is "in charge of overseeing the jail's correctional officers." Complaint, at ¶¶ 7, 8, and 9. The supervisory roles of these Defendants is insufficient to establish that they personally deprived plaintiff of his constitutional rights under *Iqbal*. Accordingly, it is recommended that the motion to dismiss be granted as to all federal claims against Defendants Rustin, Emerick, and Donis should be dismissed.

    4.    *Federal Claims Against John Doe Corrections Officer Defendants*

Plaintiff alleges that certain John Doe Corrections Officer Defendants engaged in excessive use of force against him and that other John Doe Corrections Officer Defendants failed to take appropriate action when he told them "he feared for his safety." Under Federal Rule of Civil Procedure 4(m), service must be made upon a defendant within 120 days after the filing of a complaint. The Complaint in this action was filed on January 9, 2013. There is no indication

that the John Doe Corrections Officer Defendants have been served with the Complaint. Because of the Plaintiff's failure to effectuate service, the federal claims against the John Doe Corrections Officer Defendants should be dismissed, without prejudice, for lack of service.[4]

     5. *State Law Claims*

Because it is recommended that the federal claims be dismissed, it is also recommended that the Court decline to exercise supplemental jurisdiction over the state law claims of assault and battery, negligence, false imprisonment, and intentional infliction of emotional distress.

    D.     *Futility*

If a civil rights complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile. *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). A district court must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend. *Id.*

Given that the Court has already provided Plaintiff with an opportunity to amend, (see ECF No. 22, Text Order of September 11, 2013, and ECF No. 27), the Court is not required to provide him with further leave to amend as further amendment would be futile. *Shelley v. Patrick*, 481 F. App'x 34, 36 (3d Cir. 2012). For the reasons discussed *supra*, it is recommended that Plaintiff not be granted leave to amend as it would be futile.

**III.**     **Conclusion**

For the reasons stated above, it is respectfully recommended that the Motion to Dismiss filed by Defendants be granted.

---

[4] This Report and Recommendation serves as the required notice under Federal Rule of Civil Procedure 4(m).

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(D)(2) of the Local Rules for Magistrates Judges, the parties are allowed until **August 18, 2014,** to file Objections to this Report And Recommendation. Any party opposing the objections shall have fourteen (14) days after date of service to respond to the objections. Failure to file Objections will waive the right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

Dated: July 31, 2014

*s/ Cynthia Reed Eddy*
Cynthia Reed Eddy
United States Magistrate Judge

cc:    ANDREW STRESHENKOFF
623 Brookline Blvd.
Pittsburgh PA 15226

J. Deron Gabriel
Allegheny County Law Department
Email: dgabriel@county.allegheny.pa.us